Quick et al., Commissioners, v. Monroe County

*Grant W. Nitrauer*, for plaintiffs.

*A. Greenwald Gearhart*, county solicitor, for defendant.

SHULL, P. J., March 15, 1941.—On January 16, 1941, Willard L. Quick et al., Commissioners of Monroe County, filed their petition for declaratory judgment and order of court granting a rule thereon directed to the County of Monroe as respondent. The petition prays for a declaratory judgment construing the Act of June 7, 1917, P. L. 570, sec. 1, as it relates to the compensation of county commissioners in counties of the seventh class, and asks that a rule be entered upon the County of Monroe to show cause why it should not pay to each of said petitioners the sum of $1,600, being a balance of salary claimed to be due each of them for the years 1938 and 1939.

This raises the question of whether or not, under the conditions here, salary may be increased or decreased

during the term of office for which these commissioners were elected. That the office of county commissioner is a constitutional office is true, and that it is not within the power of the legislature to increase or decrease the salary of a county commissioner during the term which he is serving is too well established to require citation of authority; and that brings us to the crux of the question before us, i. e., "To what compensation are these petitioners entitled for the years 1938 and 1939 by reason of the Act of June 7, 1917, P. L. 570, sec. 1?"

This section of the Act of 1917 fixes the compensation of county commissioners, and was the law at the time these petitioners were elected and entered upon the performance of their duties as Commissioners of the County of Monroe. That act provides:

". . . the salaries of each member of the board of commissioners in the several counties of this Commonwealth shall be as follows:—

"In counties having a population of twenty thousand and over, and less than fifty thousand inhabitants, one thousand dollars; and, where such county commissioners are also directors of the poor, then one thousand eight hundred dollars."

That Monroe County is a seventh class county and has a population of more than 20,000 and less than 50,000 is not in controversy, nor is it in controversy that, at the time these petitioners were elected and entered upon the performance of their duties as commissioners, they also acted as directors of the poor in the Monroe County District, and continued to do so for two years of their four-year term of office, i. e., 1936 and 1937, and that during that time the compensation received by each of them was the sum of $1,800 per annum as provided by the Act of June 7, 1917, P. L. 570.

That the office of director of the poor is a public office falling within the protection of the Constitution is unquestionably true (Tucker's Appeal, 271 Pa. 462), and notwithstanding that these petitioners were not directors

of the poor elected by the people, but were directors of the poor by reason of the Act of May 24, 1921, P. L. 1081, it cannot be disputed that their duties related to the welfare of society, which is for the good of the government and for which the government is responsible, and the public office so administered is as much within the protection of the Constitution as when administered by one elected by the people. The office of director of the poor, however, was not a constitutional office, but one created by the legislature; and, consequently, it was within the power of the legislature to abolish this office as it did by the County Institution District Law of June 24, 1937, P. L. 2017. That brings us to the question of: "Whether or not these petitioners, by reason of having been acting as directors of the poor at the time the office was abolished by virtue of being county commissioners in a seventh class county and at the time of the abolition of the office of directors of the poor, i. e., January 1938, the term of office for which these petitioners had been duly elected commissioners of the County of Monroe had not expired but included the years 1938 and 1939, are entitled to the sum of $800 per year for the years 1938 and 1939 in addition to the $1,800 per year which has been paid to them as commissioner's salary?"

As we have quoted above, the Act of June 7, 1917, P. L. 570, provides that in seventh class counties "The salaries of each member of the board of commissioners . . . shall be . . . $1,000.00; and where such county commissioners are also directors of the poor, then $1,800.00."

We particularly note that this act makes no provision for salary to these petitioners as directors of the poor. We cannot feel that the circumstances here bring this case within the provision of article III, sec. 13, of the Constitution of Pennsylvania, which provides:

"No law shall extend the term of any public Officer, or increase or decrease his salary or emoluments, after his election or appointment."

While the salary as provided by law at the time petitioners entered upon the performance of their duties may not be either reduced or increased during the term for which they were elected or appointed, at the time they entered upon their official duties they were entitled to $1,800 per year salary as county commissioners, provided they serve as directors of the poor, and while this salary is $800 per year greater than the salary of a commissioner in counties of the same class where they do not so serve, and while these commissioners served as directors of the poor, they were not within the class of "present paid county poor directors" referred to in section 302 of the Act of 1937.

We agree with the logic of the conclusion of our learned brother, Judge Farr, in the case of Tyler v. Wyoming County, 35 D. & C. 291, 293, 294, where he said:

"They received their salary as county commissioners and not as poor directors, the amount being contingent upon their being also poor directors. When the Institution District Law of 1937 became effective, the business of the poor districts in 32 counties was being administered by 'present paid county poor directors' who were not county commissioners and who were in office for definite unexpired terms. It is this class of poor directors referred to in section 302 as 'present paid county poor directors'. . . .

"Section 303, when it became effective, was calculated to meet the constitutional requirements and leave the commissioners just where it found them as to salary. . . .

"Where the amount of compensation rests upon a contingency such as an increase or decrease of population, the salary at the time of the election must prevail during the term, irrespective of change in population: Guldin v. Schuylkill County, 149 Pa. 210; Commonwealth ex rel. v. Walter, 274 Pa. 553.

"Therefore, we must agree with plaintiff that the happening of the contingency, viz., that the legislature repealed the Poor Law of 1925 and abolished the office of

poor director, could not reduce the salaries of the county commissioners to $500. If no provision had been made in section 303 of the Act of 1937 for the restoration of the $300, we would be bound to hold that the salary was still $800.

"A careful reading of this section indicates that the $300 additional, which he receives for services as an officer of the institution district, is salary of a county commissioner.

"The effective date of the County Institution District Law of June 24, 1937, P. L. 2017, was January 1, 1938. On that date the county commissioners were no longer directors of the poor and therefore their salary provided by the Act of June 7, 1917, P. L. 570, was $500. On that day, however, the Act of 1937 became effective and an additional $300 was provided for commissioner's salary. Therefore, there was no change in salary. The net result of the act so far as the commissioners are concerned is simply a change of name from poor directors to officers of the institution district."

That the legislature may, by act of assembly, provide additional duties to be performed by public officers exercising such offices at and after the passage of the act, without providing additional compensation, is beyond question, an outstanding example of which is the duties imposed upon the county commissioners by the Election Law, and it likewise imposed upon the county commissioners, by the Act of 1937, the duty of acting as executive and administrative officers of the institution district. By this change, there was no change in the nature of the duties they were to perform relative to the welfare of the poor other than the fact that this act relieved them of the greater and more onerous portion of the duties they theretofore performed, and likewise relieved the county funds of the payment of many thousands of dollars for poor relief that the taxpayers theretofore had to provide. The duties they now have to perform as executive and administrative officers of the institution district are

duties which were but a minor part of their duties as directors of the poor, though the Act of 1937 provides that their salary shall remain the same as theretofore received by them and, therefore, it works no reduction in their compensation; and, were we to hold otherwise, the operation of this act would bring about an increase in their salary as county commissioners during the term for which they were elected from $1,800 to $2,600 per year for the years 1938 and 1939, which is just as much prohibited by the Constitution as a decrease in compensation would be prohibited.

And now, March 15, 1941, we sustain defendant's contention that these petitioners are not, under the law, entitled to compensation in the sum of $800 in addition to the sum of $1,800 which they have received for each of the years 1938 and 1939; and, in accordance therewith, we enter judgment for respondent, with costs.